No. 22-13708

## UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

◆

GREATER BIRMINGHAM MINISTRIES,
*Plaintiff-Appellee*,

v.

SECRETARY OF STATE FOR THE STATE OF ALABAMA,
*Defendant-Appellant*.

◆

On Appeal from the United States District Court
for the Middle District of Alabama
Case No. 2:22-cv-00205-MHT-SMD

## SECRETARY OF STATE'S REPLY BRIEF

Steve Marshall
  *Attorney General*
Edmund G. LaCour Jr.
  *Solicitor General*
James W. Davis
  *Deputy Attorney General*
Misty S. Fairbanks Messick
Benjamin M. Seiss
  *Assistant Attorneys General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: 334.242.7300
edmund.lacour@alabamaag.gov

**Counsel for Secretary of State for the
State of Alabama**

April 3, 2023

*Greater Birmingham Ministries v. Secretary of State for the State of Alabama,*
No. 22-13708

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-5, the undersigned counsel certifies that the following listed persons and entities may have an interest in the outcome of this case:

1.  Alabama Attorney General's Office;

2.  Alabama Secretary of State's Office;

3.  Allen, Hon. Wes;

4.  Bokat-Lindell, Noah B.;

5.  Bowie, Blair;

6.  Calderon, Tovah R.;

7.  Campaign Legal Center;

8.  Clarke, Kristen;

9.  Davis, James W.;

10. Doyle, Hon. Stephen M.;

11. Gaber, Mark P.;

12. Greater Birmingham Ministries;

13. Huling, Alice;

14. Kallon, Hon. Abdul K.;

15. LaCour Jr., Edmund G.;

*Greater Birmingham Ministries v. Secretary of State for the State of Alabama,*
No. 22-13708

16. Lang, Danielle;

17. Lapinig, Christopher;

18. McGuire & Associates LLC;

19. McGuire, Joseph Mitchell;

20. Marshall, Hon. Steve;

21. Merrill, Hon. John H.;

22. Messick, Misty S. Fairbanks;

23. Richardson, Valencia;

24. Seiss, Benjamin M.;

25. Thompson, Hon. Myron H.; and,

26. United States Department of Justice.

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

*Greater Birmingham Ministries v. Secretary of State for the State of Alabama,*
No. 22-13708

Respectfully submitted this 3rd day of April 2023.

Steve Marshall
  *Attorney General*

s/Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
  *Solicitor General*
James W. Davis
  *Deputy Attorney General*
Misty S. Fairbanks Messick
Benjamin M. Seiss
  *Assistant Attorneys General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: 334.242.7300

**Counsel for Secretary of State for the State of Alabama**

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ................C-1

Table of Contents ...................................................................................... i

Table of Authorities .................................................................................. ii

Argument ................................................................................................. 1

    I.    This Court has jurisdiction over the entire appeal ....................................... 2

        A. The appeal is not moot ................................................................ 2

        B. The Governor's Executive Order does not impact this Court's jurisdiction ................................................................................ 5

    II.    The NVRA does not require electronic disclosure and thus does not govern the fees the Secretary may charge for it ........................................ 7

        A. Electronic disclosure is not "public inspection." .............................. 8

            1.  GBM's textual analysis fails ..................................................... 8

            2.  GBM's attempts to appeal to context fail .................................... 11

            3.  GBM's atextual arguments fail ................................................. 13

        B. Electronic disclosure is not "photocopying." ................................. 14

        C. The Secretary's fee is reasonable ................................................ 16

    III.    Section 20507(i) does not require the Secretary to disclose customized lists of records responsive to GBM's Felony Records Request ................. 18

Conclusion ............................................................................................. 24

Certificate of Service .............................................................................. 27

i

TABLE OF AUTHORITIES

## Cases

*Adirondack Med. Ctr. v. Sebelius*,
  740 F.3d 692 (D.C. Cir. 2014) ........................................................10

*Ala. Disabilities Advoc. Program v. J.S. Tarwater Dev. Ctr.*,
  97 F.3d 492 (11th Cir. 1996) ........................................................2, 5

*Arcia v. Florida Secretary of State*,
  772 F.3d 1335 (11th Cir. 2014) ........................................................23

*Bellitto v. Snipes*,
  935 F.3d 1192 (11th Cir. 2019) ........................................................12

*Campaign Legal Center v. Scott*,
  Cause No. 1:22-CV-92-LY, 2022 WL 3221301 (W.D. Tex. Aug. 2, 2022) ...11

*Campaign Legal Ctr. v. Scott*,
  49 F.4th 931 (5th Cir. 2022) ........................................................12

*Ctr. for Investigative Report v. U.S. Dep't of Just.*,
  14 F.4th 916 (9th Cir. 2021) ........................................................18

*Fulton v. Philadelphia*,
  141 S. Ct. 1868 (2021) ........................................................11

*Hawkins v. James*,
  411 So. 2d 115 (Ala. 1982) ........................................................7

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ........................................................17

*Perez v. Sturgis Public Schs.*,
  143 S. Ct. 859 (2023) ........................................................12

*Portofino Seaport Vill. v. Welch*,
  4 So. 3d 1095 (Ala. 2008) ........................................................5

*Project Vote, Inc. v. Kemp*,
    208 F. Supp. 3d 1320 (N.D. Ga 2016) ............................................11

*Project Vote/Voting for Am., Inc. v. Long*,
    682 F.3d 331 (4th Cir. 2012).........................................................23

*S.F. Residence Club, Inc. v. 7027 Old Madison Pike, LLC,*
    583 F.3d 750 (11th Cir. 2009)..........................................................4

*Sony Corp. of Am. v. Universal City Studios*,
    464 U.S. 417 (1984) ........................................................................17

*True the Vote v. Hosemann*,
    43 F. Supp. 3d 693 (S.D. Miss. 2014).............................................11

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
    484 U.S. 365 (1988) .............................................................. 2, 9, 22

*United States v. Washington*,
    142 S. Ct. 1976 (2022) ............................................................ 2, 4, 5

*Wachovia Bank, N.A. v. United States*,
    455 F.3d 1261 (11th Cir. 2006)......................................... 1, 19, 23

**Statutes**

52 U.S.C. § 20501 *et seq*............................................................................8

52 U.S.C. § 20501(b) ...................................................................................8

52 U.S.C. § 20507.......................................................................................21

52 U.S.C. § 20507(a)(3)(B) ........................................................................20

52 U.S.C. § 20507(a)(4)...............................................................................19

52 U.S.C. § 20507(b) ........................................................................... 19, 22

52 U.S.C. § 20507(b)(2) .............................................................................21

52 U.S.C. § 20507(c) ........................................................................19

52 U.S.C. § 20507(d) ........................................................................19

52 U.S.C. § 20507(i) .................................................................. passim

52 U.S.C. § 20507(i)(1) .....................................................................12

52 U.S.C. § 20507(i)(2) .....................................................................20

52 U.S.C. §§ 20701 *et seq*.................................................................22

Ala. Code § 17-4-38(b) ..................................................................6, 17

Ala. Code §§ 36-12-40 *et seq* ...........................................................6

## Constitutional Provisions

Ala. Const. art. III, § 42 ....................................................................7

Ala. Const. art. III, § 43 ....................................................................7

## Other Authorities

ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 222 (2012) ........................................................ 11, 12

Maintain, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1993)...........24

Opinion to Hon. Tim Parker, Jr., Member, House of Representatives, A.G. No. 98-00161 (June 12, 1998).................................................17

## ARGUMENT

Section 20507(i) of the National Voter Registration Act of 1993 requires the State to maintain certain voter registration records and take two additional actions with those records: (1) "make [them] available for public inspection and," (2) "where available," provide for "photocopying at a reasonable cost." GBM seeks something else: production of electronic records. But neither GBM nor the United States have uncovered this additional requirement in the Act. GBM tries to duck that issue by arguing mootness. But this Court has jurisdiction and should resolve this issue. And resolving the appeal is easy. Because all GBM has sought through its "records requests" (Doc. 35 ¶ 4) are electronic records that § 20507(i) does not require the Secretary of State to produce, GBM's claims fail. The district court's contrary order should be reversed.

On both the broader electronic records issue and the narrower Felony Records issue, GBM and the United States approach statutory interpretation by "slicing a single word from a sentence, mounting it on a definitional slide, and putting it under a microscope in an attempt to discern the meaning of an entire statutory provision[,]" *Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1267 (11th Cir. 2006) (disapproving); *see also id.* ("context is king"). They ask this Court to violate a bedrock rule of statutory interpretation, namely that statutory interpretation is a "holistic endeavor[,]" *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,*

*Ltd.*, 484 U.S. 365, 371 (1988). Only the Secretary's reading of § 20507(i) honors this endeavor. Because the district court's does not, this Court should reverse.

## I.    This Court has jurisdiction over the entire appeal.

This Court has jurisdiction for the reasons set out in the Secretary's Opening Brief. Bl. Br. at xii-xv. GBM agrees that the Secretary timely appealed from a final judgment, Red. Br. at ix, but contends that the appeal is moot and that the "capable of repetition, yet evading review" exception to mootness only saves part of it, *id.* at ix, 33-36. GBM is mistaken. Because this Court can provide the Secretary with relief, no part of this appeal is moot. And, if the electronic disclosure issue were moot, Executive Order No. 734 would be no barrier to applying the exception for matters capable of repetition, yet evading review.

### A.    The appeal is not moot.

This appeal is moot only if "it is impossible … to grant any effectual relief." *United States v. Washington*, 142 S. Ct. 1976, 1983 (2022). This Court can grant the Secretary relief by requiring GBM to pay the Secretary's fee for any electronic voter list it is allowed to keep (minus what GBM has already paid), *cf. id.; see* n.2, *infra*, or by requiring GBM to "return[] or destroy[]" the lists, *Ala. Disabilities Advoc. Program v. J.S. Tarwater Dev. Ctr.,* 97 F.3d 492, 496 (11th Cir. 1996) (*ADAP*). GBM's arguments to the contrary fail.

2

GBM argues that the appeal is moot because the parties "negotiated" a fee. Red Br. at 19, 34. That's not quite right. After the district court enjoined the Secretary, doc. 91 at 1, he worked with ES&S to create compliant lists and provided them to GBM, doc. 95-1 at 1-6; docs. 95-4 through 95-10; *see also* doc. 95 at 6-8.[1] Once in compliance, the Secretary filed a notice asserting that "429.17 in staff costs fit within the Court's narrow definition of 'reasonable costs[,]'" and he moved for an expedited ruling as to the fee the court would order GBM to pay. Doc. 95; *id.* at 9. GBM then agreed to pay $429.17. Doc. 109 at 1.

The Secretary never retreated from his position that he was entitled to one cent per name for the list responsive to the Purged Voters Request, and that, should he be required to provide the lists responsive to the Felony Records Request, then he would be entitled to one cent per name for those lists as well. Doc. 95 at 5, 9; doc. 109 at 1. Moreover, as GBM notes, the Secretary "accept[ed]" GBM's "payment without waiver of his right to additional payment should he prevail on appeal." Red Br. at 16 n.6 (citing Doc. 109 at 2). These facts do not establish a "negotiated" fee.

---

[1] The United States misunderstands what the Purged Voters Request is. The request did not concern "*all* those removed from the voter rolls, *for any reason*, after the 2020 general election." U.S. Br. at 4 (emphasis added). It concerned voters purged from the rolls in January 2021 as part of Alabama's implementation of its NVRA-compliant general program. *See* doc. 69 at 3, 5; *see also* Bl. Br. at 7-8, 13.

GBM also contends that it "did not undertake any obligation to pay the Secretary's proposed fees" "[b]y receiving its requested records through a lawfully obtained court order[.]" Red Br. at 35. Of course, the district court's order allowed GBM to accept the electronic voter lists that the Secretary was ordered to produce, but the validity of that order is at stake here. Thus, the question is whether, if this Court were to hold that the district court erred, this Court could provide the Secretary with relief. *See Washington*, 142 S. Ct. at 1983. It can.

If the Court agrees with the Secretary that § 20507(i) does not prevent him from charging one cent per name for an electronic voter list, then, as to any lists GBM is allowed to keep, GBM has underpaid pursuant to an erroneous district court order. Because "there is money at stake, the case is not moot." *Washington*, 142 S. Ct. at 1983 (citation omitted).[2] To provide the Secretary complete relief, GBM should pay the difference between the Secretary's fee and the smaller amount that the district court's order authorized. *Cf. S.F. Residence Club, Inc. v. 7027 Old Madison Pike, LLC,* 583 F.3d 750, 754-55 (11th Cir. 2009) ("A party appealing an order will not be heard to affect the rights of a third party who, pursuant to the order,

---

[2] Where the United States was challenging a worker's compensation law, it argued that, if successful on appeal, "it w[ould] either recoup or avoid paying between $17 million and $37 million in workers' compensation claims that lower courts have awarded under the earlier law." *Washington*, 142 S. Ct. at 1983. The Court said it was "not 'impossible' that the United States will recover money if we rule in its favor, and this case is not moot." *Id.*

4

acquired, in good faith, an interest in property. This rule does not, of course, bar appeal where the appellant seeks relief vis-a-vis the appellee rather than the third party." (cleaned up)). GBM's contrary argument would result in a windfall and cannot be correct. *Cf. Portofino Seaport Vill. v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008) (citation omitted) (discussing the elements of an unjust-enrichment claim). Alternatively, the "court could … effectuate a partial remedy by ordering [GBM] to destroy or return any and all copies of the" records. *ADAP*, 97 F.3d at 496.[3]

Because this Court can grant the Secretary relief as to both the Purged Voters Request and the Felony Records Request, no part of this appeal is moot.

### B.    The Governor's Executive Order does not impact this Court's jurisdiction.

GBM contends the appeal is moot but that the "capable of repetition, yet evading review" exception generally applies. Red Br. at ix. However, GBM believes that Executive Order No. 734 "call[s] into question whether the Secretary will be able to continue to impose his fee schedule" going forward such that the issue of what the Secretary may charge for electronic disclosure of records is not capable of repetition. *Id.* at 35. That argument is not well-founded for at least three reasons.

---

[3] GBM contends that questions of relief should be addressed in the district court first. Red Br. at 34 n.18. The issue for present purposes is whether this Court has jurisdiction. That is a question for this Court. *Cf. Washington*, 142 S. Ct. at 1983.

*First*, as GBM acknowledges, "the Secretary does not intend to change his fee schedule[.]" Red Br. at 36 n. 19. Thus, there has been no demonstrable change in the facts. Rather, GBM's argument is that it believes there should be.

*Second*, the Executive Order concerns only Alabama's Open Records Act. Ala. Code §§ 36-12-40 *et seq*. It does not purport to overrule Ala. Code § 17-4-38(b), which expressly provides for the fees for voter lists and vests the Secretary with discretion to set a reasonable fee for electronic voter lists. The Executive Order's text confirms its narrow scope in at least two ways. Where, in a preambulatory clause, the Executive Order says that "the Alabama Legislature has codified a right 'of every private citizen' to obtain 'any public writing of this state, except as otherwise expressly provided by statute[,]'" it is quoting (without attribution) from the Open Records Act. *See* Ala. Code § 36-12-40. Then, in paragraph 8, the Executive Order states that it is to be implemented "consistent with applicable law" and does not affect any authority granted under State law "except to the extent expressly set forth[.]" Because it does not address § 17-4-38(b), the Executive Order does not "expressly" purport to remove the discretion vested in the Secretary by that statute, and overriding that discretion is plainly not "consistent with" § 17-4-38(b).

*Third*, there would be serious questions about the constitutionality of the Executive Order, as applied to the Secretary's fee schedule—*if* the Governor had purported to overrule § 17-4-38(b). *See Hawkins v. James*, 411 So. 2d 115, 117 (Ala.

6

1982) ("It is commonly held that the executive cannot discharge the functions of the legislature in any manner by so acting in his official capacity that his conduct is tantamount to a repeal, enactment, variance, or enlargement of legislation." (citation omitted)).[4]

No part of this appeal is moot, but, if any part were, the Executive Order would not prevent application of the "capable of repetition, yet evading review" exception.

## II.    The NVRA does not require electronic disclosure and thus does not govern the fees the Secretary may charge for it.

Section 20507(i)'s unambiguous text—requiring only public inspection and photocopying, where available—resolves this appeal. That's because GBM requested only electronic lists, which the statute does not require. *See* Red Br. at 5 ("GBM … requested these records electronically."); *see also* Bl. Br. at 15 (citing pre-litigation communications).

GBM seeks to avoid this conclusion by (mostly) embracing the district court's rewrite of § 20507(i) that would have the statute's text fluctuate based on judge-made factors. The district court held:

> [T]he provision requires digital access in the specific circumstances of this case, where the records are already kept in digital form, where providing them in any other form would unduly interfere with the

---

[4] *Hawkins* relied on the separation of powers provision then found in Ala. Const. art. III, § 43, and now embodied in § 42 of the same article. 411 So. 2d at 117.

> NVRA's express purposes, and where the window of time before the
> registration deadline for the next election is so slim.

Doc. 90 at 21. GBM adopts this analysis, minus the reference to the calendar. Red

Br. at 36-37.[5] It does so to further its argument that that § 20507(i), which explicitly

specifies two methods of disclosure, somehow imposes a more flexible standard of

"meaningful public access." *See* Red Br. at 36-39, 44-49; U.S. Br. at 19-20. GBM's

arguments contradict § 20507(i)'s plain language, which does not require electronic

disclosure.

### A.    Electronic disclosure is not "public inspection."

Like the district court, GBM concludes that "public inspection" includes

receiving an electronic version of what has been inspected. But GBM's arguments

fail to justify sidestepping § 20507(i)'s plain text.

#### 1.    GBM's textual analysis fails.

GBM begins by turning to dictionary definitions to ascertain the plain

meaning of terms in § 20507(i). After relying on the Secretary's definition of

"inspect," GBM focuses almost exclusively on defining "available" despite

---

[5] The United States similarly embraces the argument, *see* U.S. Br. at 5-6, 20, 24,
though it adds that, because the NVRA allows an aggrieved person to pursue relief
"with respect to the violation[,]" 52 U.S.C. § 20501(b), it gives district courts license
to modify the NVRA's obligations as they see fit, *see* U.S. Br. at 20. That language
merely recognizes that the NVRA comprises multiple statutes dealing with a variety
of voting obligations. *See* 52 U.S.C. § 20501 *et seq.* It makes no attempt to suspend
separation of powers principles, and the United States's argument to the contrary
deserves no further discussion.

Congress telling the States exactly what they had to make available: "public inspection." *See* Red Br. at 37-38.[6] Congress set out a clear directive, not a blank slate. And making public inspection "available" doesn't change the plain meaning of "public inspection." Looking at something is not receiving a copy of it.

Nonetheless, GBM concludes that "make available for public inspection" means that "the Secretary has a duty to make the records accessible, obtainable, or able to be used for the public to view them closely in critical appraisal." *Id.* at 48. It then explains that nothing in that definition "restricts the manner in which the records should be made accessible for public scrutiny[.]" *Id.* Maybe nothing in GBM's definition does, but § 20507(i)'s plain text certainly does.

Moreover, "[s]tatutory construction ... is a holistic endeavor." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). If "public inspection" were ambiguous in isolation (it isn't), it certainly isn't ambiguous when it shares company with "photocopying." Nor is "photocopying" a "more specific requirement" that "public inspection" encompasses. *Contra* Red. Br. at 40. GBM says it be"[i]t is not unusual for a statute to provide a broad mandate … and follow it with a more specific requirement." *Id.*. GBM's support for this

---

[6] Photocopying is available at the State's option. *See* 52 U.S.C. § 20507(i) ("Each State shall maintain for at least 2 years and shall make available for public inspection and, *where available*, photocopying at a reasonable cost ...." (emphasis added)).

argument is a "*cf.*" citation to an out-of-context rule from a nonbinding decision. *Id.* (citing *Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 699 (D.C. Cir. 2014)).[7] On its merits, GBM's argument fails because it requires treating "public inspection" as a broad mandate that encompasses a specific mandate of "photocopying." That analysis both begs the question and is illogical. "Photocopying" is not a form of "public inspection," and the argument that the 1993 Congress intended "public inspection" to "fill[] a space" other than an in-person examination is unsupported. *Cf.* Bl. Br. at 26-29. And even if public inspection could include photocopying, § 20507(i) mandates the former while the latter is left to the option of the States. *See supra* n. 6. There is no overlap at all between mandatory public inspection and optional photocopying.

Photocopying is not public inspection, and Congress knew how to make public inspection and *all types* of copying available but chose not to here. *See* Bl.

---

[7] *Adirondack* involves a statute about Medicare reimbursement rates for hospitals. *See* 740 F.3d at 694. The specific question involved three grants of authority (in different subsections of the lengthy statute) to the HHS Secretary (two specific and one general) related to adjusting one of those rates. *Id.* at 699. The D.C. Circuit construed the specific grants of authority as "complement[ing] and overlap[ping]" with the general grant of authority. *Id.* It did so because the two specific grants of authority "sa[id] nothing about adjusting the hospital-specific rate; therefore, the broad grant of authority … fill[ed] a space that the specific provisions d[id] not occupy." *Id.*

Br. at 28-29 (collecting statutes). GBM fails to engage with these contemporaneous statutes that the Secretary provided illustrating such.

### 2. GBM's appeals to context fail.

GBM's appeals to context are just thinly veiled appeals to elevate purpose over text. *First*, GBM argues that § 20507(i)'s title "Public disclosure of voter registration activities" "evinc[es] the Act's intent to require meaningful disclosure[.]" Red Br. at 39; *accord* U.S. Br. at 22. But Congress did not impose an open-ended "meaningful disclosure" mandate on States; it set forth two disclosure requirements—"public inspection and, where available, photocopying at a reasonable cost." 52 U.S.C. §20507(i). The provision's title is not a grant of authority for federal courts to impose additional obligations on the States, even if those new obligations advance disclosure. In any event, "[a] title or heading should never be allowed to override the plain words of a text." *Fulton v. Philadelphia*, 141 S. Ct. 1868, 1879 (2021) (quoting ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 222 (2012).[8]

---

[8] The United States cites *Campaign Legal Center v. Scott,* Cause No. 1:22-CV-92-LY, 2022 WL 3221301 (W.D. Tex. Aug. 2, 2022), for the proposition that other courts considering the NVRA "regularly presume that meaningful public disclosure entails electronic production of the documents at issue." U.S. Br. at 27. *CLC*'s discussion is limited to one paragraph that fails to provide any textual analysis. *See* 2022 WL 3221301, at *6. The two cases upon which *CLC* relied, *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga 2016), and *True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014), never actually decided this issue—as the

*Second*, GBM argues that § 20507(i) "requires 'photocopying at a reasonable cost,' which necessarily contemplates the production of covered records[.]" Red Br. at 39. But photocopies are not required. *See* 52 U.S.C. § 20507(i)(1) (referencing "photocopying" "where available"). And "photocopying" contemplates *photo*copies, not electronic copies.

*Third*, GBM argues that "the provision requires public disclosure 'for the purpose of ensuring the accuracy and currency of official lists of eligible voters[,]'" Red Br. at 39 (citation and footnote omitted). Assuming *arguendo* GBM has the purpose right, this Court has made clear—specifically in the context of the NVRA no less—that "purpose … cannot be used to contradict the text or to supplement it." *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (citing SCALIA & GARNER, *supra* at 57); *see also Perez v. Sturgis Public Schs.*, 143 S. Ct. 859, 865 (2023) ("[W]e cannot replace the actual text with speculation as to Congress' intent.").

Not one of GBM's arguments provides contextual support to justify departing from the plain meaning of "public inspection": viewing a record where it's located.

---

Secretary argued below, *see, e.g.*, doc. 80 at 41-42. Indeed, GBM seems to have abandoned this argument even as the United States took it up. And, while the Fifth Circuit reversed and remanded *CLC* on other grounds, *see* U.S. Br. at 27, that ground was standing. The Fifth Circuit never reached the merits. *See Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 939 (5th Cir. 2022).

### 3.  GBM's atextual arguments fail.

Section 20507(i)'s plain text mandates that the statute does not speak to electronic disclosure and thus does not govern the fees that the Secretary may charge for it. Nevertheless—or perhaps precisely for this reason—GBM spends much of its brief discussing material irrelevant to that textual determination.

*First*, GBM discusses three cases recognizing that *under the common law*— that is, where there is no text to interpret—"public inspection" includes the right to copy. Red Br. at 39-40. Obviously, one need not turn to the common law to ponder what might be required when Congress specifically told the States what was required.

*Second*, GBM appeals to State law implementing the NVRA to conclude that "Alabama understood that the most appropriate manner to provide these records to voters is via electronic disclosure." *Id.* at 40-41. However, the NVRA requires public inspection and that any photocopying be at a reasonable cost. It says nothing about imposing a "most appropriate manner" obligation on States. Thus, even if a State could satisfy public inspection requirements by providing electronic records to requesters, nothing in the NVRA limits a State to that option.

*Third*, GBM says that HAVA requires keeping these records in electronic format and that "the district court properly gave effect to both [HAVA and the NVRA] by requiring the disclosure … under the NVRA in the format that they are

13

kept under HAVA." Red Br. at 41-42. But the NVRA explicitly speaks to public inspection (not electronic production) and the format of any copies, specifying photocopies. The district court did not give effect to the NVRA by requiring a method of disclosure that conflicts with the NVRA's plain text. If the NVRA is to be rewritten in light of HAVA, that is a job for Congress.

And *fourth*, GBM suggests that the Secretary is being irrational by offering public inspection because it less convenient method of disclosure—citing the district court's implication of bad faith. *Id.* at 42-43 (citing doc. 90 at 20 n.2). But it wasn't irrational to refuse GBM's records requests that were premised on a misreading of federal law.[9] Further, the Secretary did not act in bad faith by readily offering to sell the electronic voter lists responsive to the Purged Voters Request to GBM. That offer goes beyond what the NVRA requires and is consistent with the Secretary's standard practice, *see* Bl. Br. at 9-11.

**B.** **Electronic disclosure is not "photocopying."**

Though the district court's decision and GBM's brief do not attempt to insert "electronic production" into § 20507's mention of "photocopying," the United

---

[9] GBM never accepted the Secretary's offer of public inspection, so its complaints about the Secretary's subsequently adopted policy, *see* doc. 79-20, are not properly before the Court. Bl. Br. at 25 n. 7. Further, the United States cannot, *via amicus* brief, inject this issue into the appeal. *Contra* U.S. Br. at 25-26.

States's brief does. *See* U.S. Br. at 21 ("Section 8(i)'s photocopying mandate also requires electronic release[.]"). That argument fails.

Ignoring the dictionary definitions that it provides for "photocopy," the United States conflates "copying" with "photocopying" by citing language from various cases stating that copying (not photocopying) can encompass electronic production. *See* U.S. Br at 21 (citation omitted). And the United States fails to engage with the Secretary's authority instructing that "photocopy" (in accord with its plain meaning) should be narrowly construed to not include electronic production, *see* Bl. Br. at 44.

The United States then claims that "not requiring electronic release would functionally read the copying provision out of Section 8(i)" and that the "State's refusal to allow NVRA requestors to copy records themselves … violates the photocopying provision." U.S. Br. at 22 (citation omitted). The Secretary gave meaning to (and certainly did not violate) the photocopying language by being willing to print the records at his standard $1.00 per page rate—an offer for which GBM never expressed interest. *See* doc. 37 at 7 (the Secretary's counsel representing that GBM "could pay for copies of that document both in the statute -- the NVRA and in the state statutory scheme"). Moreover, the United States's argument is premised on the idea that photocopying is required, but § 20507 simply—and plainly—leaves to the States' discretion whether photocopying will be available. *Supra* n. 6.

15

**C.    The Secretary's fee is reasonable.**

Should this Court reach the reasonableness of the Secretary's fee, he stands by the arguments made in his opening brief, *see* Bl. Br. at 32-35, and adds only three brief points.

*First*, the United States suggests that GBM did not have the opportunity to purchase the records responsive to the Purged Voters Request at the Secretary's standard fee and would instead be limited to invoking public inspection. U.S. Br. at 3-4. That is wrong, Bl. Br. at 13-14, as the United States subsequently acknowledges, U.S. Br. at 4. In any event, the United States takes no position on the Secretary's fee. U.S. Br. at 1-2 & n. 1.

*Second*, GBM asserts that the Secretary's on-going routine sales are not at risk in this litigation because he offers for sale data fields "outside the scope of voter registration." Red Br. at 10 n. 4. In support of that assertion, GBM cites only to a joint stipulation about what fields are available. *Id.* (citing doc. 69 ¶ 32). GBM's assertion is its opinion, without binding legal authority, and is speculative insofar as GBM cannot know how other would-be purchasers will proceed should GBM prevail here.

*Third,* GBM relies on an Alabama Attorney General's opinion and Executive Order No. 734. Red Br. at 46 (citations omitted). This Court lacks jurisdiction to require the Secretary to comply with State law. *Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 106 (1984). To the extent, if any, that State law is relevant to this Court's analysis, GBM misinterprets the sources it relies upon. Just as Executive Order No. 734 implements Alabama's Open Records Act and does not purport to overrule Ala. Code § 17-4-38(b), *see supra* at 6, the Attorney General opinion considers the Open Records Act and does not speak to § 17-4-38(b). Opinion to Hon. Tim Parker, Jr., Member, House of Representatives, A.G. No. 98-00161, at 2 (June 12, 1998). Nonetheless, the Secretary, represented by the Attorney General, agrees that the opinion has some persuasive value in that it recognizes a distinction between "copies of public records" and "inspect[ing] public records." *Id.* at 3.

\*      \*      \*

At bottom, GBM and the United States ask this Court to update § 20507(i) to better suit their policy preferences. *See* U.S. Br. at 23 ("In an age of email and internet-based communication …."). "It may well be that Congress will take a fresh look at this new technology, just as it so often has examined other innovations in the past. But it is not [this Court's] job to apply laws that have not yet been written[,]" *Sony Corp. of Am. v. Universal City Studios*, 464 U.S. 417, 456 (1984). Congress passed up two prime opportunities to amend § 20507(i) to provide for electronic production: when HAVA amended the NVRA in 2002 (and required the States to

adopt computerized statewide voter registration lists)[10] and when it amended FOIA

in 1996, *see Ctr. for Investigative Report v. U.S. Dep't of Just.*, 14 F.4th 916, 937

(9th Cir. 2021). Congress's initial bargain and these subsequent refusals to upset it

should be respected.

Because § 20507(i) doesn't speak to electronic copies, it cannot speak to the

fees that the Secretary may charge for electronic voter lists. The district court's

judgment must be reversed. And because GBM sought only electronic lists as to both

the Purged Voters Request and the Felony Records Request, a decision in the

Secretary's favor on this point resolves the entire appeal in his favor.

## III. Section 20507(i) does not require the Secretary to disclose customized lists of records responsive to GBM's Felony Records Request.

Section 20507(i) does not require the Secretary to create and disclose a

customized list of records responsive to GBM's Felony Records Request. *See* Bl.

Br. at 36-51. These records do not "concern[] the implementation of programs and

---

[10] HAVA is not inconsistent with § 20507(i). The United States argues otherwise, suggesting that if the Secretary's argument is correct, "HAVA would have fundamentally altered the way in which NVRA records are kept while silently restricting the public's ability to benefit from the change." U.S. Br. at 24. The United States misses the point. HAVA did not *restrict* anything in § 20507(i) because it didn't amend that portion of the NVRA, and it is this tension that made HAVA's failure to amend § 20507(i) probative of Congress's intent. Further, the United States's argument is premised on the assumption that voter registration records were not electronic pre-HAVA. That is wrong. *See* doc. 79-26 at 2-4 (describing Alabama's pre-existing electronic systems).

activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" Even if they did, creating a new list is not the same as "maintain[ing] records."

"The first step of statutory construction is to determine whether the language of the statute, *when considered in context*, is plain." *Wachovia Bank*, 455 F.3d at 1267 (emphasis added). Throughout his brief, the Secretary explained how different language in § 20507 and the NVRA's overall structure[11] supported his reading. While GBM and the United States argue that "all" means all, *see, e.g.*, Red. Br. at 24; *accord* U.S. Br. at 8, that still leaves the question: "All of *what*?" The breadth of GBM's and the United States's readings would cause § 20507(i) to extend to all records concerning the administration of voter registration, even though Congress declined to require the States to "maintain ... and make available" all voter registration records and "[i]nstead [chose] … intricate phraseology[,]" *United Sav. Ass'n*, 484 U.S. at 373.

To be clear, the Secretary does not argue that the definition of "all" or "activities" is narrow, *but see* Red Br. at 22, 24; U.S. Br. at 8, 17, nor does he argue

---

[11] The Secretary acknowledges that a portion of § 20507 discusses voter registration; however, most of the statute concerns list maintenance, *see* 52 U.S.C. §§ 20507(a)(4), (b), (c), (d), and most of the NVRA's discussion of voter registration is in different provisions, *see* Bl. Br. at 2. The Secretary also acknowledges that § 20507's title refers to voter registration, but Congress did not use those words in subsection (i), and titles cannot override the text, *see supra* at 11.

that denying a voter registration application or removing a voter from the rolls due to a felony conviction isn't about accuracy and currency, *but see* Red Br. at 20-22, 25-28; U.S. Br. at 8. He argues that Congress used nuanced language to refer to list maintenance—and likely a specific type of list maintenance—and that the district court failed to take adequate stock of Congress's choices. Similarly, the United States is taking aim at a strawman when it argues that § 20507(i)(2) is one of a set and not the entire set. U.S. Br. at 17. The Secretary did not say otherwise. He pointed out that subsection (i)(2) is the only time that Congress explicitly says what records are within subsection (i)(1)'s scope and that subsection (i)(2) records concern the NVRA's general program on change of address and death. *See* Bl. Br. at 44-45, 50. That is undeniable.

Turning to some of the counter-arguments raised, GBM argues that "[t]he NVRA directly provides for the denial of voter registration applications … due to a disqualifying felony conviction[.]" Red Br. at 26 (citing 52 U.S.C. § 20507(a)(3)(B)). Actually, the NVRA merely recognizes a power the States have, *see* Bl. Br. 46, n. 18, and subsection (a)(3)—on which GBM relies—specifically applies to removals, not denials, 52 U.S.C. § 20507(a)(3) ("may not be removed").

Similarly, subsection (b)—which clearly references "maintenance"—*does not* "apply to *all* programs or activities … which include denying registration[,]" as the United States says, U.S. Br. at 11 (citing 52 U.S.C. § 20507(b)). Congress prohibited

20

"the *removal* of the name of any person from the official list of voters" for failing to vote and applied this prohibition to the "*maintenance* of an accurate and current voter registration roll." 52 U.S.C. § 20507(b)(2) (emphasis added). When an applicant is denied registration for ineligibility or removed based on a criminal conviction, Congress has no reason to fear the applicant is accidentally being removed for failure to vote. Subsection (b) is tied to the NVRA's general program—consistent with subsection (a)(4)(B)'s requirement that the general program be conducted in compliance with subsection (b).

Consistent with this argument, the Secretary relied on USDOJ's website, where a Q&A response quotes language from subsection (b) in relation to list maintenance, and specifically the general program. *See* Bl. Br. at 39-40, 46. The United States says that this response answered a question about removals. U.S. Br. at 14-15. It ignores that, within the group of questions that address § 20507, every time USDOJ's website invokes the quoted language it is discussing list maintenance or removals. *See* Doc. 79-4 at 7-11 (questions 26, 29, 36).[12] Tying "program[s] or

---

[12] In the following group of questions, the USDOJ website does speak of administering voter registration itself "in a uniform and non-discriminatory manner," doc. 79-4 at 11, which is the quoted language in subsection (b). However, that portion of the response is suggesting best practices, not suggesting that the NVRA requires the practices. To be clear, the Secretary does not dispute that voter registration should be uniform and non-discriminatory and that different laws provide for that.

activit[ies]" aimed at "ensuring the maintenance of an accurate and current voter registration roll[,]," 52 U.S.C. § 20507(b), to list maintenance is consistent with both the legislative history that the Secretary highlighted, *see* Bl. Br. at 40, and the FEC guide's treatment of the similar language in § 20507(i), *see* Bl. Br. 39.[13]

GBM dismisses the FEC guidance as "unremarkable" in "referring to list maintenance as related to list accuracy and required by the NVRA." Red. Br. at 25-26 n. 10. It is (or should be) undisputed that list maintenance concerns the accuracy and currency of the voter registration list. What *is* remarkable is that the FEC tied § 20507(i) to list maintenance and *only* list maintenance. Bl. Br. at 5-6; 39. That guidance, though lacking an explanation, is entirely consistent with Congress referring to list maintenance *every* other time that it used "program" in § 20507. *See* Bl. Br. at 38, 41; *see also id.* at 40 (citing *United Sav. Ass'n*, 484 U.S. at 371). Because denying a voter registration application is not "updating and removing

---

[13] The United States continues by focusing on a different question where the website answer affirms that the NVRA requires the States "to keep records of their voter registration activities." Doc. 79-4 at 10 (quoted by U.S. Br. at 15). With respect to § 20507(i), USDOJ merely restates the text without elucidation. Then, curiously, USDOJ invokes the "independent requirement of 52 U.S.C. § 20701," doc. 79-4 at 10, which requires election officials to "retain and preserve" various documents, including voter registration applications. 52 U.S.C. § 20701. Section 20701, which was enacted three decades before the NVRA, treats these documents very differently than does § 20507. They are retained for a different time period, are only available to USDOJ on written demand, and are not available to the public. 52 U.S.C. §§ 20701 *et seq.*

voters from the voter rolls that you have[,]"[14] § 20507(i)'s scope does not extend to it.

GBM makes much of the supposedly "unanimous[]" caselaw that supports its context-less reading. *See* Red Br. at 21-23 (citing cases). The decisions—two Fourth Circuit decisions and mostly unreported district court decisions—are unpersuasive. *Project Vote*'s "statutory analysis," U.S. Br. at 9—which the other courts followed (including the court below, *see, e.g.*, doc. 90 at 9)—consists of one-and-a-half reporter pages of conclusory analysis that violates a fundamental principle of statutory interpretation, *see Wachovia Bank*, 455 F.3d at 1267, by slicing up individual words to manufacture an incredibly broad meaning. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012).[15]

Lastly, § 20507(i)'s requirement that the States "maintain" records does not impose an affirmative obligation to spend tens of hours creating customized lists. GBM and the United States fail to grapple with the plain meaning of "maintain": "to keep in an existing state[.]" *Maintain*, MERRIAM-WEBSTER'S COLLEGIATE

---

[14] *See* doc. 110 at 142. The EAC shares the Secretary's definition of "list maintenance." Bl. Br. at 37-38; doc. 79-3 at 12.

[15] *Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014), is binding, but only as to the issue it decided. *Arcia* is specifically "confine[d]" to the 90-day-bar provision to avoid constitutional concerns, 772 F.3d at 1347, and does not purport to interpret § 20507(i). It does not control here. *See also* Bl. Br. at 45-46 n. 17.

DICTIONARY (10th ed. 1993). Additionally, they both appeal to what they posit are the practical implications of the Secretary's plain-language argument. *See, e.g.*, Red Br. at 31; U.S. Br. at 29. But the Secretary posits that these consequences support his argument that Congress did not adapt this 1993 statute to handle the digital age, but rather, intended § 20507(i) to cover "all records concerning the implementation of programs and activities …"—*e.g.*, policies or manuals about the State's procedures for a program, which the States could easily make available in their existing form. *See* Bl. Br. at 48. The Secretary *did not* possess the lists GBM demanded, *see, e.g.*, Bl. Br. at 18, 19-20; *see also* Red Br. at 30 n.13 ("*most* of the data GBM requested" (emphasis added)), and he should not have been compelled to create them.

### CONCLUSION

The district court's judgment should be reversed.

Respectfully submitted,

Steve Marshall
  *Attorney General*

s/Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
  *Solicitor General*
James W. Davis
  *Deputy Attorney General*
Misty S. Fairbanks Messick
Benjamin M. Seiss
  *Assistant Attorneys General*

24

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: 334.242.7300

***Counsel for Secretary of State for the
State of Alabama***

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as it contains 6,110 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

s/Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Solicitor General*
**Counsel for Secretary of State for the State of Alabama**

26

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 3, 2023, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the Court's CM/ECF system, which will serve an electronic copy on all registered counsel of record.

s/Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
 *Solicitor General*
**Counsel for Secretary of State for the State of Alabama**

27